[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 18, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16326
Non-Argument Calendar

_____

D. C. Docket No. 03-00553-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO TREJO-ARROYO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 18, 2005)**

Before BLACK, MARCUS  and PRYOR, Circuit Judges.

PER CURIAM:

Mario Trejo-Arroyo appeals his conviction for illegal re-entry by an alien, in

violation of 8 U.S.C. § 1326(a) and (b)(2). On appeal, Trejo-Arroyo argues that the district court erred by denying his motion to dismiss the indictment. We review a district court's denial of a motion to dismiss the indictment for abuse of discretion. See United States v. Clarke, 312 F.3d 1343, 1345 n.1 (11th Cir. 2002) (internal citations omitted). After thorough review of the record and careful consideration of the parties' briefs, we affirm.

After being indicted on September 24, 2003 for illegal re-entry by an alien, Trejo-Arroyo moved to dismiss the indictment, or alternatively for a judgment of acquittal. Relying on the Eighth Circuit's decision in United States v. Gomez, 38 F.3d 1031 (8th Cir. 1994), Trejo-Arroyo argued that the 2003 indictment was time-barred. The applicable 5-year statute of limitations is enumerated in 18 U.S.C. § 3282. Clarke, 312 F.3d at 1346 (providing that "statute of limitations applicable to § 1326 is found in 18 U.S.C. § 3282, and provides that 'no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed'" (internal citations omitted)).

In support of this argument, he stated that he had reported his presence and all relevant information to the United States when he filed a Form I-130, for a green card, in 1998 and that the statute of limitations began to run at that time.

Trejo-Arroyo's application was approved in 2000. He argued that the court should use the 1998 date because when he filed the application the INS knew or should have known that he was in the country illegally.

The district court denied Trejo-Arroyo's motion, finding that the Form I-130, which contained false information, did <u>not</u> put the government on notice, in 1998, that Trejo-Arroyo was in the country after having been deported. Trejo-Arroyo's Form I-130 falsely indicated that he did not have an alien number, which he did, and that he had never been a party to immigration proceedings, though he in fact had. Moreover, the district court noted, the only indication of INS review of the Form was in 2000 (when it was approved), which was still within the limitations period.

After Trejo-Arroyo waived his right to a jury trial and stipulated to a bench trial, the government and Trejo-Arroyo stipulated that: (1) Trejo-Arroyo was a citizen of Mexico; (2) he was found by immigration officials in Atlanta, Georgia, on August 29, 2003; (3) he was deported from the United States in 1991; and (4) he had not sought permission to be in the United States. The parties also agreed that the stipulated facts satisfied the elements of the crime charged in the indictment. The district court adjudicated Trejo-Arroyo guilty and he proceeded to sentencing.

According to the presentence investigation report ("PSI"), on August 29, 2003, Trejo-Arroyo went to the office of the Bureau of Customs and Immigration Services ("BCIS") to obtain work authorization. The examiner reviewed Trejo-Arroyo's file and noted that he had been deported in 1991 as an aggravated felon. Two BCIS agents then questioned Trejo-Arroyo, who stated, falsely, that he had never been deported. He later admitted that he had entered the United States illegally in California. Trejo-Arroyo's wife was naturalized in 2002, and Trejo-Arroyo filed an Application to Register Permanent Resident or Adjust Status on May 5, 2003, falsely claiming that he had never been deported. Based on an offense level of 22 and a criminal history category III, Trejo-Arroyo's Sentencing Guidelines range was 51 to 60 months' imprisonment. The district court adopted the PSI and imposed a 51-month term of imprisonment. This appeal followed.

"Under 8 U.S.C. § 1326, any alien who has been deported and thereafter 'enters, attempts to enter, or is at any time <u>found in</u>' the United States, shall be fined or imprisoned." <u>Clarke</u>, 312 F.3d at 1346 (internal citation omitted) (emphasis in original). "To be 'found in' the United States within the meaning of § 1326, the alien must have entered surreptitiously, bypassing a recognized immigration port of entry. The phrase 'found in' is synonymous with 'discovered in.'" <u>Id.</u> (internal quotations and citation omitted).

The date to be used for the start of the limitations period is "the date that the INS . . . discovered or could have discovered the defendant's illegal presence." Clarke, 312 F.3d at 1347. In Clarke, we noted that our approach was consistent with "[s]everal of our sister circuits [which] have elaborated that for a defendant to be 'found,' the government must either know or, with the 'exercise of diligence typical of law enforcement authorities,' could have discovered the illegality of the defendant's presence." Id. at 1346-47 (citing United States v. Herrera-Ordones, 190 F.3d 504, 510-11 (7th Cir. 1999); United States v. Bencomo Castillo, 176 F.3d 1300, 1303 (10th Cir. 1999); United States v. Sanatan-Castellano, 74 F.3d 593, 598 (5th Cir. 1996); United States v. Moses, 148 F.3d 277, 282 (2d Cir. 1995)).

Here, it is undisputed that the INS first physically located Trejo-Arroyo and determined his presence in the United States was illegal in August 2003, when he applied for a work permit. Thus, pursuant to Clarke, we must decide whether the INS should have discovered Trejo-Arroyo's illegal presence earlier, "with the exercise of diligence typical of law enforcement authorities." 312 F.3d at 1346-47 (citations omitted).

In United States v. Mercedes, 287 F.3d 47, 55 (2d Cir. 2002), a case similar to this one, the Second Circuit held that it was not unreasonable for a listing of false names and different dates and places of birth to delay the INS's determination

5

that the defendant had previously been deported.  See also Herrera-Ordones, 190 F.3d at 511 (holding alien was "found" when he admitted previous deportation and true identity to INS agent, not when he used alias during jailhouse interview with INS agent; agents investigated his identity with appropriate methodical diligence and could not have known his identity prior to his admissions); Bencomo-Castillo, 176 F.3d at 1303 (holding alien arrested under an alias and not discovered to be prior deportee until more than one year later was not "found" at time of his arrest); but see Gomez, 38 F.3d at 1037 (holding that INS officials did not exercise sufficient diligence in ascertaining the defendant's illegal status when, although the defendant provided a false name, INS had his fingerprints).  On this record, we cannot say the district court abused its discretion by denying Trejo-Arroyo's motion to dismiss based on its finding that the Form I-130 filed in 1998, the evidence on which Trejo-Arroyo primarily relied for dismissal of the indictment, contained two pieces of false information.

**AFFIRMED.**